IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DUSTIN JONES,**<br>          **Plaintiff,**<br><br>          v.<br><br>**JEFFREY A. MILLER CATERING CO.,**<br>          **Defendant.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  24CV2698** |

### MEMORANDUM OPINION

Plaintiff Dustin Jones sued his former employer, Jeffrey A. Miller Catering Co. ("JAM"), bringing claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq.*  After the parties stipulated to a partial dismissal, only Jones' retaliation claims remain.  JAM now moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), on those claims.  For the reasons set forth below, JAM's Motion will be denied.

**I.     FACTUAL BACKGROUND**

Except where otherwise noted, the following facts are not in genuine dispute.

Defendant JAM provides catering services for events in the greater Philadelphia area.  At any given time, JAM has a team of about 400 waitstaff to work its events.  To manage staffing of these events, JAM uses a third-party platform called Nowsta, which allows waitstaff to sign up for catering shifts through a cell phone application.  When a shift is added to the Nowsta platform, employees are sent a notification informing them as much; once the event is fully staffed, the listing for the event disappears from the Nowsta platform.  Although the parties disagree as to the extent to which JAM can control which employees receive notifications for which events in Nowsta, it is undisputed that the only way waitstaff can be placed on a shift is by

personally signing up through the Nowsta app—JAM does not affirmatively assign its waitstaff to work events.

Plaintiff Jones began with JAM in April 2023 as a part-time server. He worked his first event on April 28, 2023, without incident. On May 12, 2023, while working his second shift, Jones alleges that he was subjected to repeated verbal harassment of a sexual nature by two co-workers, Danny and LJ. Specifically, Jones alleges that Danny, a bartender, repeatedly alluded to Jones' physical appearance by making five to seven comments along the lines of "Mmm, tall, skinny, and young," while LJ, a server like Jones, twice asked Jones if he was gay. Jones verbally reported the conduct to his on-site supervisors that evening.

The next day, on May 13, Jones emailed a formal complaint to JAM's Human Resources director, Jean Burrell, and Chief of Staff, Kevin Lam. In his email, which had the subject line "Concerns of Workplace Banter," Jones recounted the harassment and requested not to be scheduled alongside Danny and LJ again. Lam replied the same day, thanking Jones for raising the issue and adding Cindy Nguyen, JAM's Director of Staffing, to the email thread. Burrell and JAM's founder, Jeffrey Miller, followed up in separate emails on May 15, likewise thanking Jones for bringing the issue to their attention and assuring him that he would not work with Danny or LJ again. Following these emails, Jones worked another catering shift on May 21, and was scheduled to work again on May 26 but canceled for personal reasons; he had scheduled both of these shifts prior to his May 13 report of harassment. Danny and LJ were reprimanded for their conduct and received verbal warnings.

On May 30 and June 29, 2023, Nguyen sent staff-wide emails informing JAM's employees that, during the slower summer months of June, July, and August, there would be limited shifts available to be picked up. Over the months of June and July, Jones avers that he

received no notifications from Nowsta alerting him of available shifts, and that no shift openings appeared in the Nowsta application itself, which he checked at least once per day. According to Jones, the dearth of shifts listed in his Nowsta application was engineered by JAM in retaliation for his having reported the misbehavior of his coworkers at the May 12, 2023, event. JAM, on the other hand, argues that if Jones saw no catering shifts in his Nowsta application it was simply because the events were fully staffed before Jones had a chance to sign up for them.

Though the parties offer different explanations for the lack of shifts Jones saw on Nowsta, they agree that he did not raise any concerns about his ability to receive or accept shifts until July 24, 2023, when he emailed Burrell to express his concern that he was being retaliated against. Burrell had previously emailed and called Jones on June 7 to check in, but Jones did not respond before his July 24 email. The next day, on July 25, 2023, Lam texted Jones confirming he was still listed in the Nowsta system and informing him that he could expect to see additional shifts in August. Jones received shift notifications in August and September but declined to accept them. On or around September 1, 2023, Jones moved out of Philadelphia because he could not afford to renew his rental lease.

## II. LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the

motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important . . . summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

Title VII makes it illegal to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the PHRA makes it unlawful "[f]or any employer because of the [employee's] sex . . . to . . . discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract . . . ." 43 Pa. C.S. § 955(a).

Employment discrimination claims brought under Title VII and the PHRA are evaluated

using the same standards.  *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).  Accordingly, Jones' retaliation claims brought under Title VII and the PHRA will be addressed together under the burden-shifting rubric set forth in *McDonnell Douglas Corporation v. Green*, 522 U.S. 792 (1983).  That rubric requires a plaintiff to first establish a prima facie case of retaliation by demonstrating (1) that they engaged in protected employee activity; (2) that an adverse action was taken by their employer against them either contemporaneous with or after their protected activity; and, (3) that the protected activity and the adverse action were causally connected.  *See Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (citing *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015)).  If the plaintiff makes this showing, the burden of production then shifts to the defendant "to present a legitimate, non-retaliatory reason for having taken the adverse action."  *Daniels*, 776 F.3d at 193.  Finally, should the defendant carry that burden, the onus returns to the plaintiff "to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"  *Id.* (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)).  Crucially, though the burden of *production* shifts between the parties, "the ultimate burden of *persuasion*" rests with the plaintiff "at all times."  *Id*. (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)) (emphasis added).

      Here, the central dispute between the parties concerns Jones' professed inability to pick up shifts in the Nowsta application during June and July of 2023.  Jones argues that JAM "deliberately froze [him] out from the ability to obtain shifts" during the months in question, restoring it only after Jones suggested to Burrell at the end of July that he was being retaliated against.  JAM, for its part, argues that Jones presents no evidence from which a reasonable factfinder could conclude that his ability to receive shifts was tampered with in any way, and

that, to the extent Jones did not see any shifts in the Nowsta app, it was simply because the limited number of open shifts had already been picked up whenever he looked.[1]

Underlying the parties' respective positions is a disputed question of material fact—namely, whether or not JAM had the technical ability to influence which employees received shift requests for events in the Nowsta platform. JAM argues that, because "all scheduling was [conducted] through Nowsta," which allocates shifts on a first-come, first-served basis, "shifts are provided in a way that does not favor one employee over another." Further, JAM's Director of Staffing, Cindy Lam, denied that JAM "ha[s] anything to do with anything that Nowsta does in terms of its . . . mechanical operation." However, in her staff-wide email sent on May 30, 2023, concerning the limited availability of summer catering shifts, Nguyen explained that she and her team were planning to "release[]" the shifts "in batches," and would "manually request [the servers] in rotations" instead of having [them] sign up" for shifts in the way they normally would. She also testified in her deposition that JAM is able to assign employees with certain "tags" in Nowsta based on their geographical location, and that these "tags" are used to determine which employees are offered which shifts.

Whether JAM had the ability to manipulate the Nowsta platform in such a way as to "freeze out" Jones is highly material to the retaliation analysis under the *McDonnell Douglas* framework. If JAM was able to "manually request" employees to work certain shifts (as Nguyen's email stated), then it is reasonable to infer that JAM could likewise "manually"

---

[1] JAM also argues that it could not have retaliated against Jones since he worked a shift in May after reporting the harassment and received shift requests for events in August. But evidence of record shows that the shift Jones worked after reporting harassment was scheduled *before* the report was made, and the shift requests he received for events in August were offered only *after* Jones expressed his concern to Burrell that he was being retaliated against. In other words, these arguments do not address Jones' central claim—that he was deprived shift requests during the time between his email reporting the harassment (May 13, 2023) and his later email expressing concerns about retaliation (July 24, 2023).

exclude Jones from shift requests that went out to other employees. On the other hand, if, as JAM avers, it really had no ability to control which employees received which shift requests, then Jones' arguments that JAM took an adverse employment action against him by denying him opportunities to pick up shifts would fail on the grounds of impossibility. Put differently, whether or not JAM manipulated the Nowsta platform to withhold shifts from Jones lies at the very heart of Jones' claims—but before it can be determined whether JAM did so, a fact-finder needs to weigh the parties' competing evidence and determine whether that adverse action would even be possible in the Nowsta system. *See Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . ."). For this reason, JAM's Motion for Summary Judgment will be denied. *Id*.

An appropriate order follows.

                          **BY THE COURT:**

                          **S/ WENDY BEETLESTONE**

                          _____
                          **WENDY BEETLESTONE, J.**